CECILIO MÉNDEZ PÉREZ, ET AL., peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. DANIEL E. LÓPEZ PRITCHARD, JUEZ, demandado.

*Número:* O-72-101       *Recuelto:* 26 de enero de 1973

88

*Wilfredo A. Geigel,* abogado de los peticionarios; *Tomás Torres Marrero,* abogado del interventor.

PER CURIAM: Se recurre ante nos de la resolución del tribunal de instancia en 28 de enero de 1972 la cual denegó la reconsideración de los peticionarios de la sentencia que declaró con lugar la reconvención de los demandados en el caso iniciado en su contra por los peticionarios. Previamente se había desestimado la demanda porque los peticionarios no contestaron unos interrogatorios de los demandados. Dicha sentencia condena a los peticionarios a pagar a los demandados la suma de $8,096.00 de daños más $400 por concepto de honorarios de abogado.

A continuación relacionamos los hechos del caso.

Según el testimonio del Lcdo. Cayetano Coll Pujols, a principios de 1968, la Alcaldesa de Orocovis visitó al testigo

en su hogar a solicitarle que representaran al peticionario Cecilio Méndez Pérez en una denuncia por infracción a la Ley de Automóviles a lo cual accedió. Compareció al Tribunal de Distrito donde obtuvo la absolución del acusado; que entonces el peticionario le pidió radicara una demanda por los daños que había sufrido con motivo de la colisión del vehículo del peticionario con el de los demandados en el caso; que dictó la demanda a la secretaria de su hermano Víctor Coll Pujols y le pidió que se la diera a dicho hermano para que la firmara y la radicara lo cual éste hizo. Testificó que:

"Como ya nosotros nos habíamos retirado de la práctica activa de la profesión expresamente en cuanto a lo civil se refería. Nos dedicábamos exclusivamente a la parte penal de la ley, a la parte criminal, pues yo iba por la oficina de Víctor de vez en cuando, esporádicamente, había veces que pasaban dos meses, tres meses y entonces yo más bien iba de visita. Claro, los asuntos que yo tenía pendiente los Secretarios de los Tribunales me los remitían a la oficina, a la dirección del hermano mío, allá a las oficinas pero la secretaria de él lo que hacía era cogía esos . . . esas comunicaciones, verdad, las metía en un sobre y me las dirigía a casa. Muchas llegaban a tiempo, otras llegaban después que ya la fiesta había pasado y yo no podía asistir.

. . . una vez creo que por casualidad recibí una copia de una resolución del Honorable Juez de este Tribunal Superior don Héctor Somohano donde declaraba sin lugar la demanda por incomparecencias y demás y dejaba en pie la reconvención. Yo inmediatamente, porque da la casualidad que ese día pues llamé inmediatamente a la oficina y le dije a Luz María que le escribiera una carta a Ofelia diciendo lo que había pasado para que notificara al cliente que viniera por la oficina porque yo no lo volví a ver más, después de ese primer día no lo volví a ver más.

Y hace cosa de dos meses el hombre llegó a casa a decirme que él . . . y le dije bueno pero yo de eso no se nada, yo no tengo nada que ver con eso."

El testigo Víctor Coll Pujols testificó que nunca había visto a Méndez Pérez; que su única ingerencia en el caso fue

firmar los documentos que su hermano dictó a la secretaria de aquél. En cuanto a los interrogatorios que le notificaron en el caso, testificó que "se la pasaba yo a mi hermano, o sea, mi secretaria, como él no tiene teléfono, lo que hacía era que compilaba todos los documentos que venían y se los mandaba en un sobre a mi hermano. Y verá V. H. también que no hay contestación a interrogatorios porque mirando el expediente creo que no existe contestación a interrogatorios, tengo entendido fue la alcaldesa la que estaba lidiando con este caso"; que "Yo nunca tuve la contratación profesional entre el señor Méndez y yo porque nunca hubo, primeramente yo no era el abogado de él, no existía esa relación de cliente y abogado porque el abogado del señor Méndez no era yo, tan es así que nunca he tenido el honor de conocerlo y el caso se lo llevaron a mi hermano a mi no me lo llevaron."

El peticionario, Sr. Méndez Pérez, testificó que no conocía al Lcdo. Víctor Coll Pujols ni lo autorizó a representarlo; que su propósito al solicitar del Lcdo. Cayetano Coll Pujols que radicase la demanda en cuestión era ". . . nada más para aguantar el caso en caso de que hubiera una demanda de la parte contraria en contra mía pero no con el mero hecho ni con tal propósito de obtener nada de ese señor envuelto en la otra parte"; que ". . . Al terminar el juicio y yo salir absuelto yo le pregunté [al Lcdo. Cayetano Coll Pujols] respecto a la demanda y *él me dijo que había que esperar, que se iba a quedar pendiente y que había que esperar por lo menos seis meses para saber si la otra parte contrademandaba o no.*" (Énfasis nuestro.) Con respecto al interés del demandante en el caso, el siguiente interrogatorio es revelador:

"HON. JUEZ:

Compañero, hemos entendido hasta donde ha expresado el testigo el propósito era detener una reclamación en su contra.

LIC. TORRES MARRERO:

P. Eso era ¿verdad?

R. Correcto.

P. ¿Ese era su interés?

Hon. Juez:

Un momentito compañero, lo que está envuelto aquí es la representación, vamos a . . .

Lic. Torres Marrero:

Correcto, V. H. fíjese ahora la pregunta.

P. ¿Y si ese era su interés, verdad, usted tenía interés en el caso por esa razón, entonces, si ese era su interés porqué usted a pesar de haber transcurrido tantos años usted ni siquiera fue a visitar a este abogado para ver como iba su caso que usted interesaba?

R. ¿Y cómo usted sabe que yo no fuí a verlo a él? Si usted me puede probar a mi que yo fui a su casa y no lo encontré en dos ocasiones que fui a su casa. ¿Usted me puede probar lo contrario? Pruébemelo.

P. Oiga testigo, ¿usted no habló con él, verdad que no?

R. ¿Como que no hablé con él?

P. ¿Con el Licenciado Cayetano Coll, habló con él?

R. Sí señor, la primera vez que lo vi sí.

P. Después usted dice que lo fue a procurar y no habló con él.

R. El no estaba en su casa.

P. ¿No habló con él verdad que no?

R. No señor.

P. ¿Y ahora habló con él, verdad que sí? ¿Después que recibió la sentencia, habló con él?

R. Tuve que localizarlo, me vi forzado a localizarlo para ver cual era el procedimiento, que había pasado porque yo ignoraba . . .

P. Ahora que recibió la sentencia habló con él.

R. Correcto.

P. Antes no.

R. Vuelvo y le digo que en dos ocasiones fuí a su casa y no lo pude conseguir en su casa para relacionarme con el caso.

P. Pero no hizo las gestiones para hablar con él a pesar de no haberlo conseguido.

R. Entonces cual es el hecho si yo voy a su casa en dos ocasiones y no lo encuentro en su casa, que usted quiere, él no tiene medios de comunicación, no tiene teléfono, no tiene oficina porque la oficina que él tiene es la del hermano, como se dijo anteriormente aquí, como usted quiere que yo sea un fantasma y me presente donde él está.

P. Entonces como no lo encontró .pues el caso allá que se resuelva en la forma que se resuelva porque usted no lo .encontró.

R. No, no. No es como usted lo dice, no es que se resuelva como se resuelva, si la otra parte contrademandó yo ignoraba completamente porque en ningún momento el señor me comunicó a mi que el caso había proseguido.

P. Y ustedes supieron de esta sentencia porque este abogado se lo comunicó a ustedes, ¿es correcto?

R. Según tengo entendido usted habló con mi esposa. . . .''

La demanda en el caso lleva fecha de 18 de abril de 1968. En 28 de mayo de. ese año se radicó la contestación la cual incluía una reconvención que reclamaba $75,000 de daños y perjuicios, $2,500, por daños al vehículo y $5,000 de daños sufridos por la esposa del reconvencionista. En 29 de agosto de 1968 notificó este último unos interrogatorios a los peticionarios a través de su abogado de récord Lcdo. Víctor Coll Pujols. Como no se contestaron, en 7 de octubre de 1968 el reconvencionista solicitó orden del tribunal que obligara al peticionario a contestar, orden que se expidió 8 días después. En 11 de diciembre de 1968 se solicitó se tomaran sanciones contra los peticionarios por no contestar los interrogatorios. A petición del Lcdo. Víctor Coll Pujols se pospuso la vista de esta moción para el día 4 de enero de 1969 a la cual no comparecieron las partes.

El 10 de febrero de 1969, en vista de lo expuesto, el tribunal de instancia dictó sentencia desestimando la demanda dejando pendiente de consideración la reconvención. Esta se señaló por segunda vez para ser vista en 29 de agosto de 1970 cuando sólo compareció el reconvencionista y pasó su prueba en apoyo de su reclamación.

En 16 de julio de 1971, dictó el tribunal sentencia declarando con lugar la reconvención y condenando a los peticionarios a pagar los daños previamente indicados. Luego de ordenarse la ejecución de esta sentencia mediante el embargo de bienes de los peticionarios en que éstos, a través de otro abogado, solicitaron en 1ro de octubre de 1971, que se dejara

sin efecto esta última sentencia, moción que, luego de oídas las partes y considerados sus memorándums, fue declarada sin lugar por el tribunal de instancia en 28 de enero de 1972.

Apuntan los peticionarios que el tribunal de instancia incidió al denegar su solicitud para que se dejara sin efecto la última sentencia dictada en este caso. Se basan en lo dispuesto en las Reglas 49.2(1) y 49.2(6) de las de Procedimiento Civil.(1) Sostienen que "aquí no se trata de la actuación o la falta del abogado de la parte [sino] que el abogado que aparece de récord no es el abogado contratado por la parte", por lo que a los peticionarios no se [sic] les puede imputar las consecuencias producidas por la falta o negligencia de su abogado. Invoca la doctrina de *Ramírez de Arellano* v. *Secretario de Hacienda*, 85 D.P.R. 823 (1962).

En *González* v. *González*, 76 D.P.R. 18, 21 (1954) dijimos que "No debe relevarse a una parte de las consecuencias producidas por la falta o negligencia de su abogado, a menos que se trate de un caso extraordinario donde de otra suerte resultaría un completo fracaso de la justicia."

En *Díaz* v. *Tribunal Superior*, 93 D.P.R. 79, 88, 89 (1966) añadimos que:

"Por regla general, y en ausencia de circunstancias que justifiquen lo contrario, todo litigante que escoge libremente a un abogado para que lo represente en un litigio no puede evitar las consecuencias de los actos y omisiones de tal agente y debe considerarse que ha tenido aviso de todos los hechos y actos que le han sido notificados a su abogado.

---

(1) Estas Reglas disponen que "Mediante moción y bajo aquellas condiciones que sean justas el Tribunal podrá relevar a una parte o a su representante legal de una sentencia, orden o procedimiento por las siguientes razones:

1) Error, inadvertencia, sorpresa, o negligencia excusable.
2) .
3) .
4) Nulidad de la sentencia
5) .
6) Cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia."

. . . . . . . .

Cuando se solicita el remedio provisto por la Regla 49.2, no es suficiente alegar que la omisión que dio lugar a que se dictase la sentencia se debió a error, inadvertencia, sorpresa o negligencia excusable. Hay que indicar los hechos que constituyen la justificación de la omisión . . . El peso de probar negligencia excusable gravita sobre el afectado por la sentencia, y éste debe justificar su posición por una preponderancia de la prueba." Véase, además, *Barletta* v. *Tribunal Superior*, 99 D.P.R. 379 (1970).

■ La prueba demuestra que el abogado contratado por los peticionarios para iniciar la acción en este caso incurrió en una crasa negligencia que ocasionó su completo y absoluto abandono del caso. Más aun, indebidamente delegó la representación legal de los peticionarios en otro abogado, quien, a su vez, también incurrió en negligencia, pues aunque no estaba expresamente autorizado por los peticionarios para representarlos, no se ocupó de proteger los derechos de los peticionarios asegurándose que los interrogatorios llegasen a manos del abogado contratado por los peticionarios y que éstos estuviesen representados por abogado en las vistas del caso subsiguientemente señaladas o por lo menos, que tuviesen los peticionarios conocimiento de lo que venía ocurriendo en el caso.

■ Concluimos, sin embargo, que la referida negligencia de los abogados Coll Pujols, bajo las circunstancias de este caso, no debe ser causa o motivo de que se responsabilice a los peticionarios en ausencia de una vista sobre los méritos de la reconvención en la cual los peticionarios tengan la oportunidad de una adecuada defensa pues el sostener la sentencia impugnada resultaría en un completo fracaso de la justicia. La prueba demuestra que el peticionario Méndez Pérez, carente por completo de experiencia en asuntos litigiosos al extremo que testificó que lo hacía por primera vez en su vida, trató sin éxito de comunicarse con su abogado durante los meses subsiguientes al instruir a dicho abogado que radicase

la demanda en este caso, de manera que si hubo alguna negligencia de su parte en enterarse del progreso del caso la misma constituyó la negligencia excusable a que se refiere la Regla 49.2 de las de Procedimiento Civil.

En vista de lo expuesto debe *revocarse la resolución dictada por el tribunal de instancia en 28 de enero de 1972 y en su lugar debe dictarse sentencia dejando sin efecto la sentencia dictada por dicho tribunal en 16 de julio de 1971. En tal virtud debe devolverse el caso al tribunal de instancia para que señale y celebre la vista de la reconvención en sus méritos.*